**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

1:16-cv-21012-GAYLES/TURNOFF

HERBERT MAZE and KAREN MAZE, as
parents and legal guardians of
REAGAN MAZE, a minor child,

    Plaintiffs,

vs.

CARNIVAL CORPORATION,
a for-profit corporation d/b/a
Carnival Cruise Line; and
CAROLINA ESCOBAR AMARILES, M.D.,

    Defendants.
_____/

### PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO CARNIVAL'S MOTION TO STRIKE EXPERT WITNESSES [ECF NO. 49]

Plaintiffs respond in opposition to Defendant Carnival Corporation ("Carnival")'s motion [ECF No. 49] to strike or exclude opinions of non-retained expert witnesses (1) Gabriel Vidal, M.D.; (2) Toby Guinn, Ph.D.; (3) Dana Janssen, M.D.; (4) Amanda Hardin; (5) Lori Jordan, M.D., Ph.D.; (6) Allison Wheeler, M.D.; (7) Robyn Howarth, Ph.D.; (8) Patrick Brown, OTR; and (9) Mary Holt, SLP, and state:

**MEMORANDUM OF LAW**

INTRODUCTION

Plaintiffs allege that Reagan Maze, as a 16-year-old passenger onboard the *Carnival Elation* cruise ship*,* sustained severe and permanent physical and cognitive impairments due to a ship physician's gross medical negligence. Plaintiffs intend to demonstrate that Carnival refused

to evacuate Reagan from the *Elation* despite obvious and irrefutable signs that Reagan was having a stroke—a stroke that was eminently treatable if only Carnival would allow the young girl to go ashore.

Following her stroke, Reagan was forced to undergo medical treatment by an array of doctors and other medical professionals of varying specialties. As such, Plaintiffs, in their disclosure drafted in accordance with Fed. R. Civ. P. 26(a)(1)(C), properly summarized the opinions of the nine non-retained medical experts who treated Reagan Maze and whose testimony Carnival now hopes to strike. The summarized opinions—natural byproducts of the experts' treatment—are properly categorized under Rule 26(a)(1)(C), and as such no further reports or summaries are required to properly place Carnival on notice of the nature of the expert testimony. Moreover, Plaintiff has offered up all of these treaters for deposition, vitiating any argument that Carnival would somehow be "surprised" as to what the experts—whose opinions can also be ascertained from a wealth of medical records—will testify to at trial. Still, Carnival claims it is somehow prejudiced by Plaintiffs' disclosure.

In truth, the parties could go back and forth for days citing dozens of disparate and non-binding trial court orders from this and other districts regarding the issue before the Court: Whether and to what extent Rule 26(a)(2) encumbers Plaintiffs' ability to introduce opinions from treating medical professionals who Plaintiffs have not retained and have no control over but who, in dispatching their duties to heal their patient, naturally formed valid expert opinions relevant to this litigation. In fact, Carnival has selectively cited to a few such orders. Missing from Carnival's motion, however, is a thorough analysis of the actual Rule 26 text regarding expert disclosures. That is perhaps because the rule's language—in itself and as explained by its authors—supports Plaintiffs' position that their expert disclosure is proper.

THE RULE

In pertinent part, the governing rule provides:

(A) *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
(B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—**if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony**. The report must contain:
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2) (emphasis added).

This rendition of the rule resulted from an amendment in 2010, promulgated by United States Supreme Court and approved by Congress, specifically designed to decrease the burdens on parties proffering expert testimony from non-retained experts, such as treating physicians. *FRCP Committee Notes on Rules—2010 Amendment,* at Subdivision (a)(2)(C). Under the amended rule, the disclosure required concerning an expert who is **not** "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," *see* Fed. R. Civ. P. 26(a)(2)(B), is "considerably less

3

extensive than the report required by Rule 26(a)(2)(B)." *Committee Notes* at Subdivision (a)(2)(C).

The change was made due to the judiciary's recognition that it "must **take care against requiring undue detail**" of such non-professional experts, "**keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as all those who have**." *Id.* (emphasis added). The "amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." As the drafters then emphasize, "**An (a)(2)(B) report is required only from an expert described in (a)(2)(B).**" *Id.* (emphasis added). Recognizing the inequity of a party losing the testimony of a non-paid witness merely because the party lacks the power to force the treater to write a report, a compromise was thus reached in 2010: Non-retained experts can provide Rule 26(a)(2)(C) summaries, but professional experts must provide Rule 26(a)(2)(B) reports.

Carnival does not allege—nor could it—that any of the nine witnesses whose testimony it seeks to strike is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). In other words, none of the nine witnesses are Rule 26(a)(2)(B) experts. They are all Rule (a)(2)(C) experts. And since an "(a)(2)(B) report is required **only from an expert described in (a)(2)(B)**," Carnival's claim that Plaintiff's nine Rule 26(a)(2)(C) experts must provide reports is defied by the rule's plain language as explained by its drafters. The text plainly supports Plaintiffs' position.

1:16-cv-21012-GAYLES/TURNOFF

## THE CASES

The governing rule does not itself proscribe certain types of expert testimony by Rule 26(a)(2)(C) witnesses. Indeed, the drafters made clear that a "witness who is not required to provide a report under Rule 26(a)(2)(B)"—e.g., Plaintiff's nine non-retained treating physicians—"may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705." *Committee Notes* at Subdivision (a)(2)(C). Carnival correctly notes, however, that the trial courts have sought to impose limitations on Rule 26(a)(2)(C) treating physicians' testimony where it has strayed far from the confines of their patient interactions. But even these limitations, in orders cited by Carnival no less, do not reach the vast majority of Plaintiffs' proffered expert testimony from its nine non-retained, Rule 26(a)(2)(C), treating-physician witnesses.

Carnival cites to *Jensen v. Carnival Corporation* at Page 6 of its motion.[1] Therein, Judge Goodman surveyed non-binding holdings from district courts within the Eleventh Circuit[2] and

---

[1] Additionally, *In re Denture Cream Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 152277 (S.D. Fla. 2012), another opinion relied heavily upon by Carnival, actually cites to *Jensen* for the proposition that when a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report. *Id.* at *34.

[2] Carnival cites to one main case from the Eleventh Circuit itself, *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005). Carnival claims that in this case, "the Eleventh Circuit **held** that treating physician must be deemed an expert who is required to provide a full report under Rule 26(a)(2)(B) where the physician's opinions were not necessary for treatment." *Motion to Strike* at 4 (emphasis added). This is not **at all** what the case says. Carnival's citation to it must be in error. The phrases "expert report" or "disclosure" or "Rule 26" do not appear anywhere in the *Henderson* opinion. The case deals with the admissibility of lay and opinion testimony in trial. It has nothing to do with the adequacy of expert witness disclosures. If *Henderson* said what Carnival claims (it seems accidentally) it said, the Court could not have ruled in *Jensen* that "[t]he general rule is that a treating physician may testify regarding injury causation, diagnosis, prognosis, and extent of disability, without providing a written report pursuant to Rule 26(a)(2)(B), so long as the treating physician's opinion was formed and based upon observations made during the course of treatment." *Jensen v. Carnival Corp.*, 2011 U.S.

5

concluded that "**[t]he general rule is that a treating physician <u>may</u> testify regarding [1] injury causation, [2] diagnosis, [3] prognosis, and [4] extent of disability, <u>without</u> providing a written report pursuant to Rule 26(a)(2)(B), so long as the treating physician's opinion was formed and based upon observations made during the course of treatment**." *Jensen v. Carnival Corp.*, 2011 U.S. Dist. LEXIS 108727, at *3 (S.D. Fla. Sep. 25, 2011) (emphasis added) (citing *Donaldson v. United States*, No. 6:09-cv-1049-Orl-28GJK, 2011 U.S. Dist. LEXIS 50267, 2011 WL 1806990, at *1 (M.D. Fla. May 11, 2011); *Odum v. Rayonier, Inc.*, No. CV204-190, 2007 U.S. Dist. LEXIS 48551, 2007 WL 2002445, at *3 (S.D. Ga. July 5, 2007); *Baratta v. City of Largo*, No. 8:01-CV-1894-T-EAJ, 2003 U.S. Dist. LEXIS 27628, 2003 WL 25686843, at *2-*3 (M.D. Fla. March 18, 2003)). *See also Thaler v. Fresh Mkt., Inc.,* No. 9:16-80433-CLV-ROSENBERG, 2016 U.S. Dist. LEXIS 152716, at *2 (S.D. Fla. 2016) ("'The requirement of a written report in paragraph (2)(B) [ ] applies only to those experts who are retained or specially employed to provide such testimony in the case .... A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.' Fed. R. Civ. P. 26 (1993 Amendment Notes). '**Courts have routinely held that because a treating physician naturally considers a plaintiff's diagnosis, prognosis, and cause of injuries as part of the patient's care and treatment, opinions as to those matters do not require a written report if based on the physician's examination or treatment**. …'") (internal citation omitted) (emphasis added)

Because the opinions summarized in Plaintiffs' expert disclosure (a) are based upon the treaters' observations of and interactions with Reagan Maze and (b) speak to (1) injury causation, (2) diagnosis, (3) prognosis, and/or (4) extent of disability, none of the nine treaters'

---

Dist. LEXIS 108727, at *3 (S.D. Fla. Sep. 25, 2011). Logically, opinions on "extent of

opinions should be excluded or curtailed.

APPLICATION OF THE RULE AND CASES TO THE INSTATE MATTER

Amid their disclosures copied below, Plaintiffs in **[Bracketed Annotations]** provide bases, undergirded by the *Jensen v. Carnival Corporation* "general rule" regarding treating medical professionals, for the conclusion that the expert opinions should not be stricken, excluded, or curtailed.

**[1] Dr. Gabriel Vidal, M.D.**
*Vascular Neurologist*
OCHSNER MEDICAL CENTER FOR CHILDREN
1315 Jefferson Highway
New Orleans, Louisiana 70121

<u>Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify</u>: Dr. Gabriel Vidal, M.D., will present testimony under Fed. R. Evid. 702, 703, and 705. He is a treating physician, not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and as such is not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Dr. Vidal is a vascular neurologist. He will testify regarding Reagan Maze's medical history, diagnosis, treatment, and prognosis. **[Both diagnosis and prognosis testimony are proper under Rule 26(a)(2)(C), as noted in *Jensen*, and knowledge of medical history is necessary for a treating physician to properly diagnose and prescribe a course of treatment.]** He will testify that Reagan suffered a severe cerebrovascular accident due to a middle cerebral artery infarction. **[Causation testimony is proper under *Jensen*. This opinion was formed at the time of his treatment, based on information then**

---

disability" and "injury causation," for example, may not be necessary for treatment.

7

**available. Dr. Vidal saw the scans and evaluated the patient and made these determinations in real time.]** Dr. Vidal will testify that all treatment administered to Reagan since she arrived in New Orleans subsequent to and on the day after the subject stroke was medically indicated, reasonable, and necessary **[These opinions are based upon observations and touch on diagnosis, cause of injury, prognosis, and extent of disability]**, and that all medical bills Reagan Maze has incurred secondary to the stroke are reasonable and customary in the community. Dr. Vidal will opine that Carnival's medical staff failed to satisfy the standard of reasonable care owed to Reagan in her treatment and that earlier detection of Reagan's stroke, earlier evacuation, and proper treatment—the relative efficacy of which will be included in Dr. Vidal's opinion—would have significantly lessened the permanent neurological deficits that Reagan experiences to this day. **[This is standard of care and causation testimony formed and based upon Dr. Vidal's treatment of Reagan Maze in New Orleans, in combination with the medical history (ascertainment of which was necessary to determine causation), which necessarily included the circumstances surrounding the stroke on the cruise ship. Contrary to Carnival's assertions, an opinion by a non-retained Rule 26(a)(2)(C) expert need not be "necessary for treatment,"** *see* **Note 2,** *supra***; it may be incidental to treatment so long as the opinions were formed as a result of the treatment.** *See* **Note 2,** *supra.* **Dr. Vidal's testimony above is also prognosis/extent of disability testimony, which is allowed of a Rule 26(a)(2)(C) treating physician per** *Jensen***. Moreover, as the KAREN MAZE AFFIDAVIT, ATTACHED AS <mark>EXHIBIT 1</mark>, indicates, Dr. Vidal can testify regarding the surgery he was prepared to perform on Reagan Maze until he was informed that it was too late because her seizure occurred 18 hours prior, as such is fact testimony. He can testify to the effect this had on Reagan's prognosis, as such is classic causation testimony allowed**

under *Jensen*. **The effect of not being able to perform the surgery is not something Dr. Vidal was "specially retained" to opine. His causation and prognosis testimony stems from his observation of Reagan Maze as he treated her.]**

**[2] Dr. Toby Guinn, Ph.D., NCSP**
*Certified School Psychologist*
Special Services Department
FRANKLIN COUNTY, TENNESSEE SCHOOLS
1025 Dinah Shore Boulevard
Winchester, Tennessee 37398

Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify: Dr. Toby Guinn, Ph.D., will present testimony under Fed. R. Evid. 702, 703, and 705. He is a nationally certified school psychologist who conducted testing and evaluation of Reagan Maze in the normal course of his employment with the Tennessee public school system. He is not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." As such, Dr. Guinn is not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Dr. Guinn will testify about Reagan's psychoeducational history, assessment, treatment, and prognosis. **[All such testimony is proper under *Jensen*.]** Dr. Guinn will testify as to how Reagan's injuries have altered and will continue to alter her general intellectual functioning, attention and executive functioning, fine motor skills, visuoperceptual and visuoconstructional functioning, learning and memory, academic achievement, psychological development, and social development. **[This is prognosis testimony stemming from his evaluation of Reagan Maze, which is allowed under *Jensen*.]** Dr. Guinn will opine that Reagan has permanent psychological impairments, caused by the subject incident, that significantly limit her in school, work, and play, and will continue to limit her for the rest of her

9

life. She will testify that Reagan will require further therapy. **[Again, all prognosis testimony.]** Dr. Guinn will testify that all of Reagan's assessment, care, and treatment has been psychologically indicated, reasonable, and necessary, and that the cost of Reagan's psychological assessment and treatment, as indicated in bills associated with same, is customary and reasonable in the community. **[He is qualified to render these opinions, which come from his examination and review of medical records and bills.]** Some, but not all, of Dr. Guinn's opinions are contained in the report appended hereto as *Exhibit 3*. **[This extensive report obviates Carnival's already weak argument that it could be surprised by Dr. Guinn's testimony.]**

**[3] Dr. Dana R. Janssen, M.D.**
*Assistant Professor of Pediatrics*
VANDERBILT UNIVERSITY SCHOOL OF MEDICINE
2200 Children's Way
5230 Doctor' Office Tower
Nashville, Tennessee 37232-9119
*Pediatric Cardiologist*
VANDERBILT HEART AND VASCULAR INSTITUTE
1215 21st Avenue South
MCE 5209
Nasheville, Tennessee 37203

<u>Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify</u>: Dr. Dana R. Janssen, M.D., will present testimony under Fed. R. Evid. 702, 703, and 705. He is a treating physician, not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and as such is not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Dr. Janssen is a pediatric cardiologist and surgeon. He will opine that, secondary to the middle cerebral artery infarction sustained by Reagan Maze, a procedure to close an atrial septal defect was medically indicated and necessary and that the

costs associated with same were reasonable and customary in the community. He will also describe the procedure. Dr. Janssen will opine that future care and medical monitoring may be necessary. **[This is diagnosis, causation, and prognosis testimony formed and based on his surgery on Reagan Maze and subsequent treatment.]**

**[4] Amanda Hardin, M.A., NCSP**
*Certified School Psychologist*
Special Services Department
FRANKLIN COUNTY, TENNESSEE SCHOOLS
1025 Dinah Shore Boulevard
Winchester, Tennessee 37398

Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify: Amanda Hardin, M.A., NCSP, will present testimony under Fed. R. Evid. 702, 703, and 705. She is a school psychologist who conducted testing and evaluation of Reagan Maze in the normal course of her employment with the Tennessee public school system. She is not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." As such, Ms. Hardin is not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Ms. Hardin will testify about Reagan's psychoeducational history, assessment, treatment, and prognosis. **[All such testimony is proper under *Jensen*.]** Ms. Hardin will testify as to how Reagan's injuries have altered and will continue to alter her general intellectual functioning, attention and executive functioning, fine motor skills, visuoperceptual and visuoconstructional functioning, learning and memory, academic achievement, psychological development, and social development. **[This is prognosis testimony stemming from her evaluation of Reagan Maze, which is allowed under *Jensen*.]** Ms. Hardin will opine that Reagan has permanent psychological impairments, caused by the subject incident, that

significantly limit her in school, work, and play, and will continue to limit her for the rest of her life. **[Again, all prognosis testimony.]** She will testify that Reagan will require further therapy. Ms. Hardin will testify that all of Reagan's assessment, care, and treatment has been psychologically indicated, reasonable, and necessary, and that the cost of Reagan's psychological assessment and treatment, as indicated in bills associated with same, is customary and reasonable in the community. **[She is qualified to render these opinions, which stem from her examination.]** Some, but not all, of Ms. Hardin's opinions are contained in the report appended hereto as *Exhibit 3*. **[This extensive report obviates Carnival's already weak argument that it could be surprised by Ms. Hardin's testimony.]**

**[5] Dr. Lori C. Jordan, M.D., Ph.D.**
*Assistant Professor of Neurology and Pediatrics*
VANDERBILT UNIVERSITY SCHOOL OF MEDICINE
2200 Children's Way, 9th Floor
5230 Doctor' Office Tower
Nashville, Tennessee 37232-9119
*Pediatric Neurologist*
MONROE CARELL JR. CHILDREN'S HOSPITAL AT VANDERBILT UNIVERSITY
Ayers Children's Medical Center
Winchester, Tennessee 37398

Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify: Dr. Lori C. Jordan, M.D., Ph.D. will present testimony under Fed. R. Evid. 702, 703, and 705. She is a treating physician, not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and as such is not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Dr. Jordan is a pediatric neurologist. Prior to joining the faculty at Vanderbilt University, Dr. Jordan was Director of the Pediatric Stroke Program and Co-Director of the Pediatric Neurovascular Center at the Johns Hopkins

12

Hospital. She will testify regarding Reagan Maze's medical history, diagnosis, treatment, and prognosis. **[All such testimony is proper under *Jensen*.]** She will testify that Reagan suffered a severe cerebrovascular accident due to a middle cerebral artery infarction. Dr. Jordan will testify that all treatment administered to Reagan since she arrived in New Orleans subsequent to and on the day after the subject stroke was medically indicated, reasonable, and necessary, and that all medical bills Reagan Maze has incurred secondary to the stroke are reasonable and customary in the community. Dr. Jordan will opine that Carnival's medical staff failed to satisfy the standard of reasonable care owed to Reagan in her treatment and that earlier detection of Reagan's stroke, earlier evacuation, and proper treatment—the relative efficacy of which will be included in Dr. Jordan's opinion—would have significantly lessened the permanent neurological deficits that Reagan experiences to this day. **[Dr. Jordan's opinions regarding the necessity and cost of care are based upon her review of the records, which review is customarily undertaken by doctors in treating patients. She was not "specially retained" to review records. Dr. Jordan's opinions regarding Carnival's breach of the prevailing standard of professional care stem from her review of the medical records and scans and from her observations of Reagan at the time Dr. Jordan provided treatment. Per *Jensen*, Dr. Jordan can testify to "injury causation"—including what the failure to timely treat cost Reagan in terms of brain function—because this testimony is based upon her observations made during the course of treatment, i.e., what Reagan's present condition was at the time of Dr. Jordan's treatment, in addition to Dr. Jordan's general professional knowledge as to surgical procedures and their efficacy.]**

**[6] Dr. Allison Paroskie Wheeler, M.D., M.S.C.I.**
*Assistant Professor of Pathology, Microbiology, and Immunology*
VANDERBILT UNIVERSITY SCHOOL OF MEDICINE
*Associate Medical Director, Transfusion Medicine*
VANDERBILT UNIVERSITY MEDICAL CENTER
MCN-3321 (2561)
Nashville, Tennessee 37232-2561

Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify: Dr. Allison Paroskie Wheeler, M.D., M.S.C.I. will present testimony under Fed. R. Evid. 702, 703, and 705. She is a treating physician, not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and as such is not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Dr. Paroskie Wheeler is a diagnostic pathologist and hematologist. She will testify regarding vascular coagulation and opine that, secondary to her stroke, Reagan is at a high risk of hypercoagulation and is a candidate for medical monitoring, particularly if she becomes pregnant or otherwise incurs increased estrogen levels. **[Dr. Wheeler's opinions constitute proper causation and prognosis testimony under *Jensen*, as they stem from her treatment of Reagan Maze.]**

**[7] Dr. Robyn Howarth, Ph.D.**
*Pediatric Neuropsychologist*
CHILDREN'S HEALTHCARE OF ATLANTA AT SCOTTISH RITE HOSPITAL
1001 Johnson Ferry Road Northeast
Atlanta, Georgia 30342

Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify: Dr. Robyn Howarth, Ph.D., will present testimony under Fed. R. Evid. 702, 703, and 705. She is a treating neuropsychologist, not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and as such is not required to

submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Dr. Howarth is a pediatric neuropsychologist. She will testify regarding Reagan Maze's medical history, diagnosis, treatment, and prognosis. **[This is prognosis testimony stemming from her evaluation of Reagan Maze, which is allowed under *Jensen*.]** She will testify that Reagan suffered a severe cerebrovascular accident due to a middle cerebral artery infarction. **[This testimony is based upon her view of the records, which was necessary for treatment.]** Dr. Howarth will testify that Reagan has permanent neurological deficits and to the nature and severity thereof. **[This is prognosis/extent of disability testimony that stems from treatment].** She will testify that all treatment administered to Reagan since she arrived in New Orleans subsequent to and on the day after the subject stroke was medically indicated, reasonable, and necessary, and that all medical bills Reagan Maze has incurred secondary to the stroke are reasonable and customary in the community. **[She is qualified to render these opinions, which stem from her examination and review of records.]**  Some, but not all, of Dr. Howarth's opinions are contained in the report appended hereto as *Exhibit 4*. **[This extensive report obviates Carnival's already weak argument that it could be surprised by Dr. Howarth's testimony.]**

**[8] Patrick Brown, OTR**
*Physical and Occupational Therapist*
SOUTHERN TENNESSEE REGIONAL HEALTH SYSTEM—WINCHESTER REHAB CENTER
100 Bible Crossing Road
Dechero, Tennessee 37324

<u>Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify</u>: Patrick Brown will present testimony under Fed. R. Evid. 702, 703, and 705. He is a treating healthcare professional, not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and as such is not required to submit an

expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Ms. Brown is a licensed physical and occupational therapist. He will testify as to the history, diagnosis, treatment, and prognosis of Reagan Maze. Utilizing his education, training, experience, and specialized knowledge in the field of occupational therapy and physical therapy, Mr. Brown will opine as to the efficacy of past occupational and physical therapy and the need for future occupational and physical therapy, and as to the likelihood of Reagan making specific gains in both realms. **[This is all (1) diagnosis, (2) prognosis, and/or (3) extent of disability treatment that stems from Mr. Brown's treatment of Reagan Maze.]**

**[9] Mary Holt, SLP**
*Speech Pathologist*
SOUTHERN TENNESSEE REGIONAL HEALTH SYSTEM—WINCHESTER REHAB CENTER
100 Bible Crossing Road
Dechero, Tennessee 37324

Subject Matter on Which the Witness is Expected to Testify/Summary of the Facts and Opinions to Which the Witness is Expected to Testify: Mary Holt will present testimony under Fed. R. Evid. 702, 703, and 705. She is a treating healthcare professional, not a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and as such is not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). Ms. Holt is a licensed speech and language pathologist. She will testify as to the history, diagnosis, treatment, and prognosis of Reagan Maze. Utilizing her education, training, experience, and specialized knowledge in the field of speech pathology, Ms. Holt will opine as to the efficacy of past speech pathology and the need for future such care, and as to the likelihood of Reagan making specific gains in speech proficiency. **[This is all (1) diagnosis, (2) prognosis, and/or (3) extent of disability treatment that stems from Ms. Holt's treatment of Reagan Maze.]**

## CONCLUSION

Reagan Maze's case epitomizes why the Supreme Court and Congress amended the governing rule in 2010 to allow treating physicians' opinions to be disclosed via Rule 26(a)(2)(C) summaries as opposed to full-blown Rule 26(a)(2)(B) reports. Requiring Plaintiffs to attempt to compel treating doctors—over whom they have no control—to author a report, at pain of losing their crucial testimony, is neither economical nor in the interests of justice. Carnival cannot reasonably complain that it is surprised or prejudiced by Plaintiff's expert disclosure as currently constituted, as Carnival can thoroughly depose any witness it wishes and has an abundance of medical records and Plaintiffs' expert summaries at its disposal. **At any rate, the plain language of Rule 26(a)(2), the rule's authors explanation of that text, and the interpretive case law all weigh in favor of denying the relief sought by Carnival.**

## ALTERNATIVE REMEDY

If, *arguendo,* the Court would rule that one or more experts cannot opine as to one or more issues, Plaintiffs respectfully request, rather than the extreme remedy of expert witness exclusion, that Plaintiffs be allowed to amend their expert disclosure in accordance with the Court's instructions. By Rule 37 standards, any conceivable deficiency in Plaintiffs' expert disclosure was not the result of an omission or negligence, but rather a good-faith belief as to what the rule requires—a position that Plaintiff has maintained since the time of disclosure, *see* Plaintiff's Expert Disclosure, *passim* (repeatedly arguing that "treating physician[s are] not [] witness[es] 'retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony,' and as such [are] not required to submit an expert report. *See* Fed. R. Civ. P. 26(a)(2)(B)."), and which is backed by

considerable legal authority. It would be error to exclude a witness in light of Plaintiff's substantially justified position. More importantly, there is no prejudice to the defense, and as such any error is harmless. "Failing to comply with Rule 26 is harmless when there is no prejudice to the opposing party." *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD-ALTONAGA, 2012 U.S. Dist. LEXIS 152277, at *38 (S.D. Fla. Oct. 22, 2012) (internal citations omitted and quotations). *See also Blakely v. SAFECO Ins. Co. of Ill.,* No. 6:13-cv-796-Orl-37TBS, 2014 U.S. Dist. LEXIS 36720, at *10 (M.D. Fla. Mar. 20, 2014) (determining proper remedy for insufficient expert disclosure was compelling amendment). There is ample time in this litigation to cure any defect claimed by Carnival so that this case will be decided upon the merits.

## DEFENDANT'S ATTEMPT TO PRECLUDE DEPOSITION(S)

Regardless of the Court's decisions as to this motion, scheduled depositions of one or more of these nine witnesses should not be forestalled. Even if, *arguendo*, certain opinions would be stricken or Plaintiffs would need to amend their disclosure, as a general matter, a "witness who is not required to provide a report under Rule 26(a)(2)(B)"—e.g., Plaintiffs' nine non-retained treating physicians—"may both testify **as a fact witness** and also provide expert testimony under Evidence Rule 702, 703, or 705." *FRCP Committee Notes* at Subdivision (a)(2)(C) (emphasis added). Carnival must concede that all of these witness have firsthand knowledge of one or more issues potentially relevant to this action and are thus fact witnesses in addition to experts. The depositions should proceed.

1:16-cv-21012-GAYLES/TURNOFF

## REQUEST FOR HEARING

Plaintiffs, pursuant to Local Rule 7.1(b)(2), respectfully request oral argument as to this motion. Plaintiffs respectfully submit that, given the number of witnesses that are the subject of this motion and the numerous individual arguments that can be made as to each, oral argument may be the most efficient method for determination, as such would allow the Court to ask questions of the parties if necessary.

WHEREFORE, Plaintiffs respectfully request that the Court deny Carnival's motion.

1:16-cv-21012-GAYLES/TURNOFF

Respectfully submitted,

By: */s/ Mason Kerns*
LEESFIELD SCOLARO, P.A.
*Attorneys for Plaintiffs*
**THOMAS SCOLARO** (FL Bar No. 178276)
E-Mail: Scolaro@Leesfield.com
**MASON KERNS** (FL Bar No. 91754)
E-Mail: Kerns@Leesfield.com
2350 South Dixie Highway
Miami, Florida 33133
Telephone: 305-854-4900
Facsimile: 305-854-8266

**Certificate of Service**

I certify that on April 12, 2017, the foregoing document was filed via CM/ECF and served upon opposing counsel via the email addresses indicated in the below Service List.

By:   /s/ *Mason Kerns*
MASON KERNS

*Service List*

FOWLER WHITE BURNETT, P.A.
*Attorneys for Defendants*
**MICHAEL J. DRAHOS**
drahos@fowler-white.com
Northbridge Centre
515 North Flagler Drive, Suite 2100
West Palm Beach, Florida 33401
Telephone: (561) 802-9044
Facsimile: (561) 802-9976
**ESTHER E. GALICIA**
egalicia@fowler-white.com.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33133
Telephone: (305) 789-9200
Facsimile: (305) 789-9201